IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BEVERLY HAZELTON,

    Plaintiff,

v.

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

    Defendant.

CIVIL ACTION FILE NO.

1:16-cv-4298-CAP-JKL

## **FINAL REPORT AND RECOMMENDATION**

This case is before the Court on Plaintiff Beverly Hazelton's suit challenging the partial denial of her application for disability insurance benefits by the Defendant Acting Commissioner of Social Security Administration ("Commissioner"). For the reasons discussed below, I **RECOMMEND** that the decision of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings.

## **I.   PROCEDURAL HISTORY**

In January 2013, Hazelton applied for disability income benefits, alleging a disability onset date of September 1, 2012. (Tr. 145-50.) The application was

denied initially and upon reconsideration. (Tr. 96-99, 101-03.) Hazelton had a hearing before an Administrative Law Judge ("ALJ") on January 29, 2015. (Tr. 42-79.) On March 19, 2015, the ALJ issued a partially favorable decision finding that Hazelton was not disabled for the period between September 1, 2012, and July 30, 2013, but that beginning July 31, 2013, she was disabled. (Tr. 21-41.) Hazelton requested review of the hearing decision (Tr. 16-18), and on September 19, 2016, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-6). Hazelton then filed the instant civil action seeking review of the Commissioner's denial of benefits.

## II. SUMMARY OF PERTINENT RECORD EVIDENCE

On October 12, 2009, Hazelton presented to Piedmont Rheumatology Consultants, P.C. with complaints of "bad pain in [her] left side back mostly but on the right also," as well as general complaints of stomach and back pain. (Tr. 313.) She was prescribed medication and instructed to return six months later. (Tr. 315.) On April 28, 2010, she returned to Piedmont Rheumatology Consultants with complaints of back, leg, and ankle pain. (Tr. 308.) William H. Wilson, M.D., conducted a physical examination and concluded that the pain suggested degenerative arthritis of the lower lumbar spine. (Tr. 309.) He assessed her with

osteoarthrosis, generalized, in multiple sites. (*Id.*) In November 2010, Hazelton was again seen by Dr. Wilson. (Tr. 303.) She complained of pain extending from her left hip down through the foot, along with right hip pain. (*Id.*) She described her pain as eight on a scale of ten. (*Id.*) Dr. Wilson found that the limb pain was sciatic in nature and again suggested degenerative arthritis of the lower lumbar spine, and he treated her medication and a steroid injection. (Tr. 304-05.) From December 2010 through September 2011, Hazelton continued to visit Piedmont Rheumatology Consultants for treatment of leg, ankle, and foot pain. (Tr. 290-302.)

On August 17, 2012, while walking in a parking lot, Plaintiff was struck by a truck. (Tr. 217.) She sustained injuries to the neck, back, and left hip, and was treated in the Emergency Department of Atlanta Medical Center. (Tr. 211-12, 217-47.) On August 24, 2012, she presented to Peachtree Spine Physicians complaining of back pain, which she described as nine on a scale of ten. (Tr. 257.) She described the pain as sharp, aching, throbbing, shooting, and burning; stated that her symptoms were aggravated by lifting, bending, laying, sitting, walking, and coughing; and indicated that the symptoms were relieved with medication. (*Id.*) Imaging studies from September 4, 2012, showed small disc protrusion, left

3

posterior disc herniation, and a very large anterior spur potential affecting the esophagus; however, Hazelton reported no difficulty swallowing. (Tr. 255.) Imaging also indicated multilevel lumbar disc and facet degeneration and posterior disc protrusion. (*Id.*) She was prescribed physical therapy at Sovereign Physical Therapy, where she attended at least thirteen sessions from September through late October 2012. (Tr. 255, 354-82.)

On November 2, 2012, Hazelton returned to Peachtree Spine Physicians for follow-up after physical therapy. (Tr. 214.) She reported back and neck pain and "aching" in her right upper extremity. (Tr. 214, 253.) She stated that she was experiencing continuous pain, and that the pain radiated to her shoulders. (*Id.*) On November 20, 2012, she again visited Peachtree Spine Physicians complaining of back pain that radiated to the mid and upper back. (Tr. 250.) She was diagnosed with lumbardosacral spondylosis without myelopathy and herniated intervertebral disc. (Tr. 251.)

On February 7, 2013, Hazelton presented at Primary Care Specialists, LLC and saw Courtney D. Shelton, M.D. for joint pain involving multiple sites, obesity, and hyperlipidemia. (Tr. 266.) On February 19, 2013, she returned to Primary Care Specialists for a follow-up. (Tr. 267.)

4

Hazelton returned to Piedmont Rheumatology Consultants in April 2013, complaining of pain in the knees, ankles, back, neck, and shoulders. (Tr. 283.) Dr. Wilson noted that her hands were tender and that Hazelton reported that they "lock up sometimes." (Tr. 286.)

On July 20, 2013, Dr. Wilson completed a Health Care Professional Certification for the Metropolitan Atlanta Rapid Transit Authority ("MARTA") in which he indicated that Hazelton had been diagnosed with osteoarthritis and multiple joint pain and that she had difficulty walking or standing for prolonged periods of time. (Tr. 330.) He noted that she could walk only less than one city block without assistance, that she could not walk up stairs without assistance, and that she was "unable to stand, walk,[or] sit for prolong[ed] period[s] of time." (Tr. 331.) On July 23, 2013, MARTA approved her application for MARTA mobility. (Tr. 421.)

On July 31, 2013, Hazelton was seen by Dr. Wilson for another physical examination. (Tr. 276). She complained of pain all over, and that it was worse in the back, hands, neck and arms. (*Id.*) She stated that she was having difficulty writing or typing for long periods of time. (*Id.*) Dr. Wilson noted that her hands were tender and that Hazelton complained that they would lock up on occasion.

5

(Tr. 279.) Hazelton returned to Piedmont Rheumatology Consultants in December 2013, May 2014, and September 2014. (Tr. 429, 439, 445, 451.)

On November 26, 2014, Dr. Wilson completed a Pain Evaluation questionnaire in which he reported that Hazelton experienced generalized joint and muscle pain at a level of eight to nine out of ten, and that she had suffered from the pain since October 2009. (Tr. 477.) He indicated that her complaints of pain were credible, and opinioned that the pain would prevent her from concentrating and completing tasks in a timely manner, and that she would "constantly" be off task— i.e., more than 67% of the time—due to pain. (*Id.*)

## III. THE PARTIALLY FAVORABLE DECISION

Under the regulations promulgated by the Commissioner, the ALJ must follow a five-step sequential analysis when evaluating a disability claim. 20 C.F.R. § 404.1520(a). That analysis is as follows:

1. The ALJ first determines whether the applicant is currently working; if so, the claim is denied.

2. The ALJ determines solely on the basis of the medical evidence whether the claimed impairment is "severe"; that is, an impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities; if not, the claim is denied.

3. The ALJ decides, again, only using medical evidence, whether the impairment equals or exceeds in severity certain impairments

> described in the Commissioner's Listing of Impairments; if it does, the claimant is automatically entitled to disability benefits.
>
> 4. The ALJ considers whether the applicant has sufficient residual functional capacity ("RFC"), defined as what an individual "can still do despite his limitations," to perform the claimant's past work; if so, the claim is denied.
>
> 5. The ALJ decides, on the basis of the claimant's age, education, work experience, and RFC, whether the claimant can perform any other gainful and substantial work within the economy.

20 C.F.R. § 404.1520(a)(4).

In the partially-favorable decision dated March 19, 2015, the ALJ applied this sequential analysis to conclude that Hazelton was not disabled from her alleged onset date of September 1, 2012, until July 30, 2013, but that she became disabled starting on July 31, 2013. The ALJ found that since the alleged onset date of September 1, 2012, Hazelton had the severe impairments of degenerative disc disease, hypertension, osteoarthrosis/arthritis, and fibromyalgia. (Tr. 27.) The ALJ next found that Hazelton's impairments did not meet or medically equal any of the Listings. (Tr. 28.)

The ALJ then assessed Hazelton's RFC and concluded that prior to July 31, 2013, Hazelton had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) with the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or

7

> walk for 4 hours per 8 hour day and sit 6 hours per 8 hour
> day with normal breaks. The claimant was able to climb
> ramps and stairs occasionally but could never climb
> ladders, ropes and scaffolds. She could balance
> frequently and occasionally stoop, kneel, crouch or
> crawl. She needed to avoid unprotected heights. She
> was able to perform frequent handling of objections as
> gross manipulation and occasional fingering of objects as
> fine manipulation bilaterally.

(Tr. 28.) Beginning July 31, 2013, however, the ALJ found she would have the same RFC, but would also likely to be off-task 10% of the workday due to pain. (Tr. 33.)

The ALJ explained that he chose July 31, 2013, as the alleged onset date because prior to that date, Hazelton's medically determinable impairments could reasonably have been expected to cause some of the alleged symptoms, but her statements and testimony concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (Tr. 32.) The ALJ wrote as follows:

> The claimant appeared at the hearing using a cane and
> testified that it was recommended but not actually
> prescribed[,] and there is no evidence to confirm that
> assertion. She alleged an onset of September 1, 2012[,]
> and she testified she was unable to work because most
> jobs were with computers and typing and selling and she
> cannot do that anymore because her hands would not let
> her and she is not quick with sales like she used to be
> when she was "sales person of the year". She indicated
> that she retired early because of the limitations imposed
> by her hands but alleged an onset date more

> commensurate with the purported back and hip injuries sustained in August 2012. She testified that she does little around her home and has somehow to essentially provide for her daily needs and her assertions about her hands being her main limitation were buttressed by her testimony about her problems dressing or buttoning. While there is evidence of the history of treatment by Dr. Wilson beginning in 2011, those records fail to disclose complaints about the hands, which she has testified as being her main limitations from working, until on or about July 2013.

(Tr. at 32-33.)

Having determined Hazelton's respective RFCs, the ALJ concluded that before July 31, 2013, she was capable of performing past relevant work and that she had work skills that were transferable to other occupations allowed by the RFC. (Tr. 33.) Beginning July 31, 2013, however, the ALJ determined that Hazelton's RFC prevented her from being able to perform her past relevant work, and that there were no jobs that existed in significant numbers in the national economy that she could perform. (Tr. 35.) Accordingly, the ALJ concluded that Hazelton was not disabled prior to July 31, 2013, but became disabled on that date and continued to be disabled through March 19, 2015, the date of the decision. (*Id.*)

## IV. STANDARD OF REVIEW

This Court must review the Commissioner's decision to ensure that it is supported by substantial evidence and is based upon the proper legal standards.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Specifically, substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (quotation omitted). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," even if the evidence preponderates against the Commissioner's decision. *Bloodsworth*, 703 F.2d at 1239.

## V. DISCUSSION

Hazelton argues that the ALJ's selection of July 31, 2013 as the date on which she became disabled is arbitrary and not based on expert medical evidence in violation of Social Security Ruling ("SSR") 83-20. [Doc. 12 at 15-20.] The Commissioner responds that the medical record provides substantial evidence to support the ALJ's determination of a disability onset date of July 31, 2013, and that the medical records prior to that date are neither inadequate nor ambiguous to establish Hazelton's condition. [Doc. 13 at 5-9.] Hazelton has the better argument.

SSR 83-20 defines the onset date as "the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at *1 ("[I]t

is essential that the onset date be correctly established and supported by the evidence."). The ruling sets forth how the onset date of a disability should be determined:

> The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

*Id*. at *3.

The ruling provides that the factors relevant to determining the onset date for disabilities of nontraumatic origin (such as the impairments at issue in this case) include the claimant's allegations, her work history, and medical and other evidence related to the severity of the impairment. SSR 83-20, 1983 WL 31249, at *1. The date alleged by the individual should be used if it is consistent with all the evidence available. *Id.* at *3. "When the medical or work evidence is not consistent with the allegations, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.*

The ruling recognizes that with slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing precisely when an

11

impairment became disabling. SSR 83-20, 1983 WL 31249, at *2. Under those circumstances, "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id*. In such a case, the ruling provides that the ALJ "should call on the services of a medical advisor" to assist with selecting an appropriate onset date as inferred from the record as a whole. *Id.* at *3. "This judgment, however, must have a legitimate medical basis." *Id.*

"[C]ourts have generally interpreted SSR 83-20 to require that an ALJ obtain the opinion of a medical expert when the medical evidence is either inadequate or ambiguous as to the specific date of onset." *Nixon v. Astrue*, No. 1:11-CV-2032-JSA, 2012 WL 5507310, at *4 (N.D. Ga. Nov. 14, 2012) (collecting cases). Accordingly, if there is sufficient medical evidence for the ALJ to determine a claimant's disability onset date, such that the onset need not be inferred, a medical expert is not required. *Caballero v. Comm'r of Soc. Sec.*, No. 6:16-CV-1056-ORL-GJK, 2017 WL 1929708, at *3 (M.D. Fla. May 10, 2017); *Goldsby v. Astrue*, No. 2:11-CV-03411-RDP, 2013 WL 1176179, at * 5 (M.D. Ala. Mar. 18, 2013).

After careful consideration of the record, I find that the ALJ did not provide a "convincing rationale" for selecting July 31, 2013, as the alleged onset date. *See*

12

SSR 83-20, 1983 WL 31249, at *3. According to the ALJ, the principal reason why he selected July 31 as the onset date was that Hazelton first reported hand pain to Dr. Wilson on that date, which, according to the ALJ, undermined Hazelton's contention that she had to retire from her previous employment and could not work due to hand pain. (Tr. 32-33.) The ALJ is not correct. In fact, during an April 2, 2013 follow-up, Hazelton complained to Dr. Wilson of tenderness in the hands and that they "lock up sometimes." (Tr. 286.) Thus, the record shows that July 31, 2013 was not the first time that Hazelton complained of hand pain to Dr. Wilson. As a result, the stated rationale for selecting the onset date was mistaken. Further, Dr. Wilson, Hazelton's treating physician, opined, that Hazelton had suffered from pain since 2009 that would keep her off task constantly, and the ALJ did not discount that opinion. (Tr. 32, 477.) Dr. Wilson's opinion that from 2009 forward Hazelton was constantly off task is significant because the only difference in the pre and post July 31, 2013 RFC assessments (and the ALJ's disability determination) is the ALJ's finding that beginning July 31, 2013, Hazelton would be off task 10% of the day due to pain (and not that Hazelton had additional limitations with fingering or grasping, as the rationale provided might have suggested). For both these reasons, then, I find that the record is ambiguous as to

13

whether Plaintiff was disabled at some point prior to July 31, 2013, and that that the ALJ's decision is not adequately supported.

In sum, the SSR 83-20 dictates that the Commissioner use a claimant's alleged onset date "if it is consistent with all the evidence available," but that where the medical evidence is insufficient to establish a precise onset date and the onset date must be inferred, an ALJ must consult with a medical advisor to make that determination. 1983 WL 31249, at *2-3. The medical evidence in this case does not unambiguously establish that Hazelton's alleged onset date was July 31, 2013, and between the medical evidence and the ALJ's stated rationale, I cannot determine why that particular date should have been selected. Without a convincing rationale for selecting a specific onset date, the ALJ should have consulted a medical advisor to make that determination. Because the ALJ did not do so, the Commissioner's decision should be reversed and this case remanded for further proceedings.

## VI. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that the case be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

IT IS SO RECOMMENDED this 2nd day of November, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge